IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

NORMA A. WOFFORD, )
)
Plaintiff, )
)
v. ) Case No. CIV-07-013-KEW
)
JAMIE BONILLA, individually; )
CENTRAL TRANSPORT, INC., )
a Michigan corporation; and )
NATIONAL UNION FIRE INSURANCE )
COMPANY OF LOUISIANA, )
)
Defendants. )

## OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Exclude Expert Testimony of Cecil H. Lane, Jr. Under Daubert filed May 2, 2008 (Docket Entry #71). Plaintiff, Defendants PepsiCo, Inc., Pepsi-Cola Company and Conopco, Inc. and Defendant B. W. Sinclair, Inc. filed responses to the Motion. The moving Defendant replied.

Defendants seek to exclude the opinion of Plaintiff's proffered expert witness, Cecil H. Lane, Jr. ("Lane"). Lane describes his qualifications and experience enabling him to testify as an expert in his affidavit dated December 5, 2007. He states he

> has been involved in the investigation of motor carrier
> accidents and related matters over the past 35 years,
> both for Arizona Department of Public Safety and as a
> privately retained consultant. I have qualified many

times as an expert witness in both federal and state
court cases involving motor carrier industry standards,
operating procedures and organization, motor carrier
safety regulations and related subjects to vehicular
accidents involving motor carriers and their drivers.

* * *

I have testified many times concerning motor
carriers' compliance and/or non-compliance with all parts
of both federal and state(s) motor carrier safety and
hazardous materials regulation.

In his deposition, Lane made it clear that he was not an accident reconstructionist and was not offering testimony as such. In reaching his conclusions, Lane reviewed the police accident investigation report, deposition transcripts of Larry Russell (a witness to the accident involved in this case), Brenda Betty Reese (the driver of the vehicle in which Plaintiff was riding), Carrie Wyrick (an investigating police officer), and Plaintiff.

Defendants do not challenge Lane's qualifications as an expert witness. However, they do contest many of the conclusions he reaches as a part of the opinions he intends to render at trial. In assessing the foundations for Lane's opinions, this Court looks to the prevailing authority and the parameters it establishes. Generally, expert testimony is permitted

[i]f scientific, technical, or other specialized knowledge will
assist the trier of fact to understand the evidence or to determine
a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training or education may testify thereto in the
form of an opinion or otherwise, if (1) the testimony is based upon
sufficient facts or data, (2) the testimony is the product of
reliable principles and methods, and (3) the witness has applied

the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

The court acts as a gatekeeper as to any such testimony by making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593 (1993). This analysis applies to all expert testimony. Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). Against this backdrop, this Court will address each of Lane's opinions in turn.

**1) Testimony Related to Bonilla's Speed**

Defendants contend Lane should be precluded from offering testimony that Bonilla's speed either caused or contributed to the accident. The evidence indicates the posted speed limit in the intersection where the accident occurred to be 55 miles per hour. While a dispute exists as to the precise speed Bonilla was traveling while proceeding through the intersection, it is undisputed he was traveling under the posted speed limit. Lane appears to take issue with the totality of Bonilla's actions while traveling through the intersection which was controlled by a flashing yellow light. Plaintiff's driver, Ms. Reese, was controlled by a flashing red light, a stop sign, and a flashing board which read "cross traffic does not stop." It is equally

undisputed that Ms. Reese ignored or did not see these control devices and negligently drove into the intersection without stopping, in violation of the laws of the State of Oklahoma.

When pressed during his deposition, Lane testified,

> Q: Okay. And you're not critical – if, in fact, he was driving 45 miles per hour, you're not critical of someone going through that intersection at 45 miles an hour, are you?
>
> A: I am not.
>
> Q: Okay. So if he was traveling 45 or 20 or 25 or somewhere in between, you're not critical of the speed that Mr. Bonilla was traveling at the time of the impact?
>
> A: I'm only critical in the respect that regardless of what speed he was traveling, his view was now obstructed of the Reese vehicle. . . .

Depo. of Cecil Lane, p. 116, ll. 23-25, p. 117, ll. 1-8.

Given that Lane himself does not testify that speed was a contributing factor to the accident, he will not be permitted to testify otherwise at trial.

**2) Testimony Concerning Lane Change**

Defendants next challenge Lane's ability to testify to the jury that the lane change effected by Bonilla caused or contributed to the accident. The facts of the case indicate Bonilla approached the intersection behind another semi-tractor trailer in the right hand lane of a two lane highway. As he came toward the intersection, Bonilla changed lanes into the left hand lane before striking the vehicle in which Plaintiff was a passenger.

Lane has testified that the lane change was improper in

4

accordance with accident avoidance procedures known by professional motor carrier drivers because Bonilla was aware Plaintiff's vehicle was at the intersection as he approached and Reese was not looking his direction. Lane proffers that professional drivers are taught to expect and anticipate the unexpected.

Under case authority in Oklahoma, a driver has the right to assume that other drivers will respect and obey the law with reference to stop signs and stop lines. Fauks v. Garrett, 235 P.2d 921, 925 (Okla. 1951). Consequently, Bonilla was not legally obligated to anticipate that Reese would not stop at a properly posted intersection and yield the right-of-way to him. Rather, Lane renders this opinion under the rubric of the ethereal "accident avoidance techniques."

One of the most important components to the gatekeeper function performed by this Court is whether the proposed expert testimony will serve as an assistance to the jury or whether it interferes with the factual finding which any reasonable jury would be capable and competent to assess for itself. Thompson v. State Farm Fire and Casualty Co., 34 F.3d 932, 941 (10th Cir. 1994). make through his or her day-to-day experiences. In this instance, the jury will be able to make the factual determination of whether Bonilla's lane change caused or contributed to the accident without Lane's interpretation of those facts. His recitation of "accident avoidance techniques" does nothing to assist the jury in making

that factual determination and will not be permitted at trial.

**3) Standard of Care of Truck Drivers**

Lane has also offered testimony which imposes a higher degree or standard of care upon truck drivers than other drivers on the road. When he was examined on this issue at his deposition, Lane was asked

> Q: Is there any state law that differentiates in respect to how much care a person is supposed to take in their driving, versus - commercial vehicles versus regular vehicles, in the State of Oklahoma?
>
> A: Not that I'm aware of.

Depo. of Cecil Lane, p. 134, ll. 19-23.

Therefore, the basis for such a higher degree of care as espoused by Lane is not Oklahoma law.

Lane also identifies Federal Motor Carrier Safety Regulation ("FMCSR") 392.2, which requires that truck drivers comply with the laws of the state in which they are operating unless federal law imposes a higher standard. However, Lane also testified Bonilla was not in violation of any state or federal law and, therefore, was not in violation of this regulation. Depo. of Cecil Lane, p. 137, ll. 2-5.

This, then, leaves the Court with the conclusion that Lane's imposition of a higher standard of care upon a truck driver is simply his own creation to tailor his testimony to this case. It would again be obvious to any reasonable jury that the size and weight of a semi-tractor trailer would require a greater stopping

6

distance and awareness of position on the road. An expert is not necessary for this purpose and does not assist the jury in its determination.

Moreover, this Court will instruct the jury as to the appropriate standard of care of Bonilla - based in recognized law. Such is not the function of an expert witness. <u>Werth v. Makita Elec. Works</u>, 950 F.2d 643, 650 (10th Cir. 1991).

Plaintiff attempts through her response to identify new regulations which ostensibly impose a higher standard of conduct and care upon truck drivers. However, none of these regulations were identified by Lane as being the basis for his opinion. Plaintiff cannot now attempt to bolster Lane's position with *ad hoc* post-deposition justifications. Lane is bound by the opinions he rendered in his report and deposition - none of which identified the additional regulations set out by Plaintiff in the briefing. Consequently, Lane's testimony will not include the imposition of a higher standard of care upon Bonilla as a truck driver.

**4) Bonilla's Conduct at the Flashing Yellow Light**

Lane is also critical in his opinions of Bonilla's conduct while approaching the flashing yellow light at the intersection where the accident occurred. In the affidavit Lane first offered to memorialize his opinions, he stated Bonilla "failed to obey a yellow flashing traffic light and proceed with extreme caution through the intersection in violation of FMCSR Part 392.2 and

Oklahoma State laws." Lane then modified his testimony at his deposition and admitted that Oklahoma law does not require "extreme" caution at a flashing yellow light but, rather, just caution. Depo. of Cecil Lane, p. 91, ll. 22-25, p. 92, ll. 1-7.

Further, when asked whether Bonilla violated Oklahoma law or FMCSR 392.2 in his conduct at the flashing yellow light, Lane testified

> Q: And we've also established that he did not violate 392.2 of the Federal Motor Carrier Safety Regulations, which simply says that he's supposed to follow state law, right?
>
> A: Well, he put himself into a position that this accident resulted in it with the caution light there.
>
> Q: Well, no - We've already established that he didn't - that he complied with state law in respect to his actions regarding a flashing yellow light, right?
>
> A: He slowed his vehicle, yes.
>
> Q: Okay. And according to witnesses, proceeded with caution into the intersection?
>
> A: That's what the witness said, yes.
>
> Q: And you don't have any evidence to the contrary in that respect, do you?
>
> A: Other than the fact that he has three different speeds that he's talking about, 50 to 45 to 20, and which - it changes based upon his statement and his testimony and the statement of the driver alongside him said they were both traveling - or appeared to be traveling about 45 miles per hour.
>
> Q: All below the speed limit?
>
> A: All below the speed limit.
>
> Q: . . . in respect to responding to a flashing yellow

8

light as far as the state requirements, did he?

A: The state said that if he slowed down.

Q: And that's acceptable?

A: That is acceptable.

Q: And he didn't violate Federal Motor Carrier Safety Regulation 392.2 because that simply states that drivers are supposed to comply with state laws?

A: That is correct.

Depo. of Cecil Lane, p. 135, ll. 23-25, p. 136, ll. 1-25, p. 137, ll. 1-5.

Lane then proceeded to testify that Bonilla's conduct at the flashing yellow light violated industry standards. However, the industry standards he identified relate to Bonilla's conduct just prior to and at the time of impact in allegedly steering left rather than braking and holding a straight course. Lane does not identify a violation of an industry standard related to the flashing yellow light and the caution the presence of such a light requires. Lane will not be permitted to testify regarding a violation of Oklahoma laws, federal regulations, or industry standards related to Bonilla's conduct at the flashing yellow light.

**5) Bonilla's Fatigue at the Time of the Accident**

Lane also stated in his affidavit that Bonilla's actions at the time of the accident indicated "he may have been in a state of low mental awareness or fatigue at the time of the collision in violation of FMCSR Part 392.3. The record is devoid of any

evidence to support this assertion. Indeed, the evidence indicates Bonilla received a full night's sleep the night before the accident. Lane admits such at his deposition and also admits the lack of evidence supporting his assertion in his affidavit. Therefore, any such testimony from Lane shall be excluded at trial.

### 6) "Incorrect" Evasive Action by Bonilla

Lane criticizes Bonilla's action at the time of the collision in steering left, moving with the vehicle in which Plaintiff was riding as it passed in front of him before and during impact. Lane contends Bonilla should have either maintained a straight course while braking or steered in the opposite direction from that of the crossing vehicle. Lane opines that the severity of the impact would have been "greatly reduced" if Bonilla had proceeded on a straight course.

Defendants challenge Lane's conclusions and testimony, contending (a) the testimony does not assist the jury, since the jury can determine if Bonilla's actions contributed to the accident; (b) the testimony concerning the reduced severity of the accident if Bonilla had taken the appropriate actions is sheer speculation. Plaintiff asserts Lane may testify to these matters due to his experience and training, including the fact he teaches courses in accident avoidance.

When an expert testifies as to opinions which are not based on scientific or technical facts outside of the jurors' common

10

knowledge or experience, exclusion of the expert testimony is warranted as "the jury is fully capable of assessing the facts to determine causation." Sims v. Great American Life Ins. Co., 469 F.3d 870, 889 (10th Cir. 2006). Whether Bonilla's steering to the left caused or contributed to the accident is a factual determination upon which the jury can weigh and render a decision. Lane's testimony that he should not have steered as he did does not assist the jury or require specialized knowledge or expertise. He is simply providing an opinion on the ultimate determination for the jury. Lane's testimony on this issue will be precluded at trial.

Equally suspect is Lane's speculation regarding the reduced severity of the accident. As previously noted, Lane makes it clear in his deposition that he is not testifying as an accident reconstructionist and did not perform the necessary calculations and functions related to such a determination. During his deposition, Lane stated

> Q: So even if Mr. Bonilla had reacted in this split second as you claim he did, you can't say that the accident would have been avoided or Ms. Wofford's injuries would have been any different, can you?
>
> A: I don't know about the injuries. I don't know that the accident, if he'd hit further back, would have been different.
>
> Q: You can't say that if he had changed his steering in the split second when he was surprised, that the accident - impact with the van would have been avoided? You can't say it would have been avoided, can you?

11

A: No. I can't say to a probability it would be avoided.

Q: And you can't say --

A: But it still remains - it's possible it could have been avoided.

Q: But I'm talking about in respect to a reasonable degree of certainty, that you can't say that the accident would have been avoided, can you?

A: I cannot.

Depo. of Cecil Lane, p. 76, ll. 8-25, p. 77, ll. 1-2.

Allowing such testimony at trial would permit Lane to engage in the "subjective belief or unsupported speculation" specifically dissuaded in Daubert. Mitchell v. Gencorp, Inc., 165 F.3d 778, 780 (10th Cir. 1999) citing Daubert, 509 U.S. at 590. He performed none of the scientific analysis necessary to testify to such a bald, admittedly unsupported conclusion. Accordingly, he will not be permitted to testify at trial to this opinion regarding the propriety of the evasive action taken by Bonilla.

IT IS THEREFORE ORDERED that Defendants' Motion to Exclude Expert Testimony of Cecil H. Lane, Jr. Under Daubert filed May 2, 2008 (Docket Entry #71) is hereby **GRANTED**. While Lane is not precluded from testifying at trial as an expert, his testimony shall not include the matters excluded by this Opinion and Order.

IT IS SO ORDERED this 10th day of June, 2008.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE